# EXHIBIT B

# PART 1 OF 6



UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| ---------------------- | : | Case No: 07-48694 |
| IN RE: | : | |
| | : | Detroit, Michigan |
| ROBERT J. JULIAO | : | |
| | : | Wednesday, December, 2, 2009 |
| | : | 1:49 p.m. to 4:31 p.m. |
| ---------------------- | | |

TRANSCRIPT OF EVIDENTIARY HEARING
BEFORE THE HONORABLE WALTER SHAPERO
UNITED STATES BANKRUPTCY JUDGE

TRANSCRIPT ORDERED BY:

    DAVID A. LERNER, ESQ.,
    (Plunkett Cooney)

A P P E A R A N C E S:

    ANDRIJANA VUJIC, ESQ.,
    (Hammerschmidt, Stickradt Associates)
    Attorney for the Debtor.

    CHARITY A. OLSON, ESQ.,
    (Plunkett Cooney)
    Attorney for Wells Fargo Bank.

AudioEdge Transcription, LLC
425 Eagle Rock Avenue - Suite 201
Roseland, New Jersey 07068
(973) 618-2310
www.audioedgetranscription.com

I N D E X

08/25/09

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| FOR THE DEBTOR | | | | |
| TRACY JULIAO | | | | |
| By Andrijana Vujic | 9 | | 67 | |
| By Charity A. Olson | | 38 | | 74 |

| EXHIBITS | | IDENT | EVID |
|---|---|---|---|
| Exhibit 1 | Letter from Office of Chapter 13 Trustee | 5 | 7 |
| Exhibit 2 | First Proof of Claim 5/24/07 | 5 | 7 |
| Exhibit 3 | Second Proof of Claim 8/22/07 | 6 | 7 |
| Exhibit 4 | Letter from ASC to Tracy and Robert Juliao | 6 | 7 |
| Exhibit 5 | ACDV Reports From Wells Fargo | 7 | 7 |
| Exhibit 6 | Transunion Credit Report 8/24/09 for Tracy Juliao | 15 | 20 |
| Exhibit 7 | Letter from ASC dated 11/12/09 | 27 | 28 |
| Exhibit 8 | Equifax Credit Report | 29 | 30 |
| Exhibit A | Wells Fargo Statement of Payment History | 94 | |
| Exhibit 9 | Documents | 95 | |

1          COURT OFFICER:  All rise.  Court is in session.  The

2     Honorable Walter Shapero presiding.  You may be seated.

3          Calling Case Number 07-48694, Robert J. Juliao.

4          THE COURT:  Appearances, please.

5          MS. VUJIC:  Andrijana Vujic from Hammerschmidt,

6     Stickradt Associates appearing on behalf of Mr. and Mrs.

7     Juliao.

8          MS. OLSON:  Good afternoon, Your Honor.  Charity

9     Olson appearing on behalf of Wells Fargo Bank.

10         THE COURT:  This is a continued hearing on the

11    matter of the motions for sanctions for violation of the stay.

12    And are the parties ready to proceed?

13         MS. VUJIC:  Yes, Your Honor.

14         MS. OLSON:  Yes, Your Honor.

15         THE COURT:  All right.  Each of the parties will be

16    presenting evidence and witnesses today I assume.

17         MS. VUJIC:  Yes.

18         THE COURT:  Okay.  All right.  Anybody --

19         MS. OLSON:  Your Honor --

20         THE COURT:  Yes.

21         MS. OLSON:  -- Wells Fargo will not be presenting

22    witnesses today.  You may recall that Wells Fargo did

23    voluntarily produce Ms. Midge Baker in August of this year --

24         THE COURT:  Yes.

25         MS. OLSON:  -- to provide testimony.

1          THE COURT:  Yes.  I remember that.

2          MS. OLSON:  Thank you, Your Honor.

3          THE COURT:  This is a continuation essentially of

4     that --

5          MS. OLSON:  That -- that's --

6          THE COURT:  -- hearing as I recall.

7          MS. OLSON:  -- correct, Your Honor.

8          THE COURT:  And let's see, did we have exhibits

9     introduced at that time from Wells Fargo?

10         MS. OLSON:  No, Your Honor.

11         THE COURT:  That's my recollection, but I wanted to

12    make that clear at least at the moment.

13         All right.  Have the parties discussed the

14    introduction of any -- agreed introduction of any possible

15    documents to be presented today first from the debtors, moving

16    -- moving party's standpoint?

17         MS. VUJIC:  Yes.  We have, Your Honor.  Ms. Olson --

18         THE COURT:  And have you come to any agreement on

19    any of the exhibits?

20         MS. OLSON:  We have on --

21         MS. VUJIC:  Yes.  We --

22         MS. OLSON:  -- some of the exhibits, Your Honor.

23         THE COURT:  All right.  Might we dispose of that?

24    And are they numbered or lettered?

25         MS. VUJIC:  They're numbered, Your Honor.

1    THE COURT:  All right.  Could you indicate for the

2    record those exhibits which you have stipulated to the

3    admittance of?

4        MS. VUJIC:  Exhibit 1, Your Honor, is a letter from

5    the Office of the Chapter 13 standing trustee, Tammy Terry in

6    Detroit that discusses misapplied payments.

7        THE COURT:  Just give me the letter and the date and

8    the --

9        MS. VUJIC:  Okay.  From the Office of Chapter 13,

10   standing trustee.  The date is -- it looks as though they

11   don't have a date, but it says as of December 5th, 2007 a

12   periodic audit.  I'd imagine that's around the time that it

13   was sent.

14       THE COURT:  All right.  That's Exhibit 1.

15       MS. VUJIC:  Correct.

16       THE COURT:  And is that admitted by stipulation?

17       MS. OLSON:  Yes, Your Honor.  I don't believe the --

18   the date upon which it was sent, but we have agreed to

19   introduction of that document, Your Honor.

20       THE COURT:  All right.  Next.

21       MS. VUJIC:  The second exhibit is the first proof of

22   claim filed by Wells Fargo.  It was filed by attorneys for

23   Wells Fargo, Trott and Trott.

24       THE COURT:  Is that Exhibit Number 2?

25       MS. VUJIC:  It's Exhibit Number 2, dated 5/24/2007.

 1          THE COURT:   Any objection to that?

 2          MS. OLSON:   No objection, Your Honor.

 3          THE COURT:   Thank you.  Next.

 4          MS. VUJIC:   Exhibit Number 3 is the second proof of

 5    claim dated August 22, 2007, filed by attorneys for Wells

 6    Fargo, Trott and Trott.

 7          THE COURT:   Again, the filing date was --

 8          MS. VUJIC:   Oh, I'm sorry.  August 27 --

 9          THE COURT:   August --

10          MS. VUJIC:   -- August 22nd, 2007.

11          THE COURT:   Any objection to that?

12          MS. OLSON:   No objection to that, Your Honor.

13          THE COURT:   Thank you.  Next.

14          MS. VUJIC:   Exhibit Number 4 is a letter from

15    America Servicing Company to Tracy and Robert Juliao regarding

16    -- I see correction of credit reports dated July 16th, 2008.

17          THE COURT:   Any objection to that?

18          MS. VUJIC:   This is the letter?

19          Your Honor, the letter itself is not objectionable,

20    however, it does contain some handwritten notes that we would

21    object to having included as part of the exhibit.

22          THE COURT:   Can we stipulate that those should not

23    be considered as part of the basic exhibit and --

24          MS. VUJIC:   Yes, Your Honor.

25          THE COURT:   All right.  Be admitted on that basis.

1        MS. OLSON:  Okay.

2        MS. VUJIC:  Exhibit Number 5 are ACDV reports from

3   the mortgage company, Wells Fargo.  And I --

4        THE COURT:  What was the -- what was your

5   description?

6        MS. VUJIC:  They are called ACDV.  And Ms. Olson

7   knows exactly what that --

8        THE COURT:  ACDV report?

9        MS. VUJIC:  Correct.

10       THE COURT:  Plural or singular?

11       MS. OLSON:  It would be plural, Your Honor.

12       THE COURT:  All right.

13       MS. OLSON:  There are several of them that have been

14   compiled in one exhibit.

15       THE COURT:  All right.  That's a compiled exhibit.

16   All right.  Any objection to that?

17       MS. OLSON:  No, Your Honor.

18       THE COURT:  All right.  Does that constitute the

19   totality of the agreed-upon admitted exhibits?

20       MS. VUJIC:  Yes.  Yes, Your Honor.

21       THE COURT:  All right.  The Court will admit those

22   without objections.

23       Does Wells Fargo have any exhibits today that have

24   been agreed upon at any rate?

25       MS. OLSON:  At this time, Your Honor, Wells does not

1  have exhibits, but would reserve the right to introduce --

2  introduce exhibits for rebuttal purposes.

3          THE COURT:  All right.  Thank you.

4          Is the debtor prepared to proceed?  Do you wish to

5  make any kind of an opening statement or do you wish to

6  proceed directly to the evidence?

7          MS. VUJIC:  Directly to the evidence, Your Honor.

8  I --

9          THE COURT:  All right.

10         MS. VUJIC:  I believe I made an opening statement at

11 the last hearing and at the motion.

12         THE COURT:  All right.  May I have copies or the

13 originals of the Exhibits 1 through 5?

14         MS. VUJIC:  May I approach?

15         THE COURT:  Yes.  I assume Counsel for Wells Fargo

16 has copies as well?

17         MS. OLSON:  I do, Your Honor.

18         THE COURT:  Thank you.

19         THE COURT:  Let's proceed.

20         MS. VUJIC:  Your Honor, at this time, we would like

21 to call Ms. Tracy Juliao to the stand.

22   (Whereupon, the witness enters the room and takes the witness

23                          stand)

24         COURT OFFICER:  Ma'am, if you'll remain standing.

25

1   T R A C Y   J U L I A O, DEBTOR, SWORN

2              COURT OFFICER:  You may be seated.

3   DIRECT EXAMINATION BY MS. VUJIC:

4        Q    Ms. Juliao, you are Mr. Robert Juliao's wife; is

5   that correct?

6   A    Yes.  It is.

7        Q    And did you file the joint bankruptcy case with Mr.

8   Juliao?

9   A    No.  I did not.

10       Q    So you are not a named party in this case; is that

11  correct?

12  A    No.  That's correct.

13       Q    Could you please tell the Court what your occupation

14  is?

15  A    I'm a house psychologist.

16       Q    And which degrees do you possess?

17  A    I have several masters degrees.  I have a masters in

18  developmental psychology, a masters in counseling psychology

19  as well as a doctorate in counseling psychology and a post

20  doctorate fellowship in house psychology.

21       Q    Are you currently employed?

22  A    Yes.  I am.

23       Q    How many positions do you hold?

24  A    I'm sorry.  I -- it's probably easier for me to just go

25  through this out loud.  I work full time at a -- in a hospital

1   setting as a faculty in family matters and residency program.

2   I am also a faculty member at the University of Phoenix

3   currently teaching two classes. I'm a faculty member at the

4   University of Michigan both Flit and Dearborn campuses

5   teaching a class in Flint and a class in Dearborn. I think

6   that's it. I think.

7       Q    And what is your gross salary if --

8   A    Everything together?

9       Q    -- approximately all of them. Yes.

10  A    It's approximately 120,000 a year.

11      Q    Have you searched for other employment?

12  A    Yes. I have.

13      Q    What were the salary ranges for the jobs that you've

14  applied for?

15  A    I have applied for positions ranging from 150 -- from 100

16  to $150,000.

17      Q    And that would be just one position?

18  A    That would be one position. Yes.

19      Q    How many hours do you work currently among all these

20  jobs --

21  A    I --

22      Q    -- work weekly?

23  A    -- work over 80 hours a week.

24      Q    And the positions that you have applied for were

25  full-time jobs?

1  A    Full-time jobs approximately 40 hours a week.

2       Q    Do you believe you were qualified for these

3  positions?

4  A    Absolutely.

5       Q    Were you -- were you offered any of these positions?

6  A    No.

7       Q    Were you given a reason as to why you were not

8  offered any of these positions?

9  A    Yes.  For -- there have been a couple of government

10  positions that I've applied for that require security

11  clearances and whatnot and as a result of my credit report and

12  the information that's showing from the mortgage, that has

13  been why I've been told I've not been qualified.

14      Q    Okay.

15  A    That I was a great candidate for the position but because

16  of that.

17      Q    Ideally, would you prefer to have your own practice

18  or -- or work for someone in a position such as you've applied

19  for in the past?

20  A    I've actually been trying for over a year to open my own

21  practice.

22      Q    Do you believe your income would be higher, lower?

23  What would it --

24  A    My income would increase if I had my own practice.

25      Q    Your own practice?  More than now or more than the

1   jobs that you've applied for or both?

2   A    It could potentially be both, but at minimum it would be

3   more than what I'm making now with my combined jobs.

4        Q    Do you know what approximately a psychologist

5   practicing in your field would be earning in his or her own

6   practice?

7   A    It depends on how busy the practice is, but essentially,

8   depending on the type of services I provide, I can charge

9   anywhere from 150 to $200 an hour.

10       Q    Okay.  What has been -- you have -- you have applied

11  -- have you applied for loans in order to be able to begin

12  your own business?

13  A    I have not applied for loans.  I've sat with a couple of

14  different business bankers who have indicated to me that the -

15  -

16            MS. OLSON:  Objection, Your Honor, to the extent the

17  witness is attempting to testify as to hearsay.  And we

18  believe that would be inadmissible.

19            THE COURT:  I would sustain such an objection.

20            MS. VUJIC:  Thank you, Your Honor.

21  BY MS. VUJIC:

22       Q    Why have you not applied for loans?  You said that

23  you had attempted to but haven't actually applied for them?

24  A    I have been -- I have been advised not to apply for them.

25       Q    Okay.

1      MS. OLSON:  Objection, Your Honor.  Same -- same
2   objection.
3      MS. VUJIC:  Your Honor, and what I'm trying to get
4   at is not necessarily to prove that these brokers are denying
5   her  -- or these lenders are denying her for -- for the
6   reasons that she's going to state on the record.  I'm trying
7   to give an -- a de facto representation of -- of the damages
8   that she's been caused and why these -- why and how the -- the
9   reporting on the -- on the credit report is affecting her.
10  It's not necessarily as to the truth of the -- of the matter
11  that she's asserting as to what she has been told by these
12  lenders.
13      THE COURT:  I'll allow the last question, the answer
14  to the last question.
15      MS. VUJIC:  Okay.
16  BY MS. VUJIC:
17      Q    Continue.
18  A    Can you repeat the question for me, please?
19      Q    You have -- you said you have not applied for credit
20  -- for loans; is that correct?
21  A    For business loans.  Correct.
22      Q    For business loans, correct?
23  A    That's correct.
24      Q    And why have you not applied for them?
25  A    Because I have been advised not to because I would be

1   denied -- I have been told by two business bankers that I

2   would be denied for the loans based on my credit history.

3           MS. VUJIC:  Okay.  Your Honor, at this time, I would

4   like to introduce -- move to introduce into evidence credit

5   reports from Experian, Transunion and Equifax that Ms. Juliao

6   has provided to me.

7           THE COURT:  Are they separately numbered?

8           MS. VUJIC:  I have -- I will number them, Your

9   Honor.  They would be 4, 5 and 6.

10          THE COURT:  Well, I -- I believe you've introduced

11  Exhibits 1 through 5 so far.

12          MS. VUJIC:  Oh --

13          THE COURT:  So if they're going to be separately

14  numbered --

15          MS. VUJIC:  Yes.  It would be --

16          THE COURT:  -- they would probably be 6, 7 and 8.

17          MS. VUJIC:  -- 6, 7 and 8, Your Honor.  I apologize.

18          THE COURT:  Well, let's hear them one at a time.

19          MS. VUJIC:  Okay.

20  BY MS. VUJIC:

21      Q    Ms. Juliao, I'm going to show you your Transunion

22  credit report.  Did you -- did you request this credit report?

23      A    Yes.  I did.

24      Q    Okay.

25          MS. OLSON:  Your Honor, if I may, at this time, I

1   don't have a copy of the report.  I did have a chance to

2   briefly look at it in an effort to stipulate to its entry.

3   That is not, in fact, a document that I can stipulate to entry

4   of on behalf of Wells Fargo.

5              THE COURT:  Well, I didn't ask you to stipulate at

6   this point.  I think she's laying a foundation for its

7   admission.

8              MS. OLSON:  Okay.

9              THE COURT:  So why don't we let her do that and then

10  you can object or not object --

11             MS. OLSON:  Certainly.

12             THE COURT:  -- as you see fit.

13             MS. OLSON:  Certainly, Your Honor.

14             So, Exhibit --

15             MS. VUJIC:  This would be Exhibit 6, Your Honor.

16             THE COURT:  All right.  Has it been marked?

17             MS. VUJIC:  No.  It has not.

18             THE COURT:  All right.  I suggest we go through the

19  regular procedure which is to mark, identify and see if there

20  are any objections and --

21             MS. VUJIC:  It is Transunion credit report for Tracy

22  Juliao dated August 24th, 2009.  It's marked as Exhibit Number

23  6.

24             THE COURT:  And has it actually been marked by the

25  reporter?

1          MS. VUJIC:  No.  Not by the Court.

2          THE COURT:  Well, let's do that first --

3          MS. VUJIC:  Okay.  May I approach?

4          THE COURT:  -- so we have a good here.

5          MS. VUJIC:  May I approach?

6          THE COURT:  Yes.

7   BY MS. VUJIC:

8          Q    Ms. Juliao, I'm going to show you a Transunion

9   credit report that is named for you, for Tracy Julio.  Did you

10  -- did you request this report?

11  A    Yes.  I did.

12         Q    And how did you request it?

13  A    I requested it online.

14         Q    Online.  And it was sent directly to you?

15  A    Yes.

16         Q    Okay.  I -- I'm going to show you it and please

17  identify it as such.

18  A    So that it is a Transunion credit report?  Is that --

19         Q    That is your --

20  A    Yes.

21         Q    -- Transunion credit --

22  A    Yes.

23         Q    -- report.

24  A    This is my Transunion credit report.

25         Q    On the second page of that credit report, I believe

1    is America Servicing Company as it was for Well -- Wells Fargo

2    reporting on your mortgage.  Do you see that?

3    A     Yes.  I do.

4         Q     Does it report any kind of delinquency?

5    A     It does.  It says that it is past due, $3,879.

6         Q     Thank you.

7              THE COURT:  Are you offering it in evidence?

8              MS. VUJIC:  I would like to introduce this into

9    evidence at this time, Your Honor.

10             THE COURT:  Objection?

11             MS. OLSON:  Your Honor, I would object.  I don't

12   believe a proper foundation has been laid.  Furthermore, I

13   believe the introduction of this document would be a classic

14   hearsay to the extent it's being offered to assert Ms.

15   Juliao's opinion regarding her -- her credit report.  And it's

16   certainly not a document of -- of Wells Fargo.  I don't even

17   have a copy of it, Your Honor.

18             THE COURT:  Well, we can arrange to make sure you

19   have it.  Is there some reason why you haven't provided

20   copies?

21             MS. VUJIC:  I -- I apologize, Your Honor.  I thought

22   at the last hearing that I had provided -- or I -- right after

23   the last hearing that I had provided these in e-mail form.  At

24   this point, I provided several credit reports and I can either

25   find a copy of my e-mail and Ms. Olson can either find a copy.

1    THE COURT:  Or we can make -- accommodate the

2  situation.  But what is the grounds of rule of evidence that

3  you think is implicated in connection with this?  And I'm

4  addressing myself to counsel for Wells Fargo.  What rule of

5  evidence makes this inadmissible?

6    MS. OLSON:  It would be inadmissible as hearsay to

7  the extent it is being introduced, Your Honor, to establish

8  that Mrs. Juliao has been damaged by the contents of -- of

9  this document.

10    THE COURT:  I'm not so sure it's offered for that

11  purpose.  Is it?

12    MS. VUJIC:  I was attempting to offer it into

13  evidence to show what the mortgage company is reporting as

14  delinquencies as opposed to what's being shown on the

15  trustee's records.

16    THE COURT:  Well, it seems to me it would be

17  admissible to show what was reported to the credit bureau.

18  Beyond that, I don't know.

19    MS. OLSON:  And -- and Wells Fargo has already

20  previously through -- through the testimony of Ms. Baker

21  admitted that, in fact, reporting has taken place with respect

22  to Mrs. Juliao.  I just want to be clear as to what the

23  purpose of the report coming in is --

24    THE COURT:  I --

25    MS. OLSON:  -- Your Honor.

1    THE COURT: I understand.

2        Is the -- the offer of this exhibit go beyond?

3        MS. VUJIC: Well, I -- I suppose a little bit of a -

4    -

5        THE COURT: What -- what is it offered to prove?  To

6    prove that -- and I -- my recollection is not perfect as in

7    the prior hearing because it was some time ago, but clearly,

8    as I recall, there was information reported to a or the credit

9    bureaus and substantively, as I recall -- correct me if I'm

10   wrong -- was what was just indicated on the written report

11   that's being offered.  So does the -- is the purpose of this

12   to prove something beyond the fact that what was -- that --

13   that Wells Fargo reported this information to the credit

14   bureau and they put it on a credit report?

15       MS. VUJIC: I would imagine -- for me, Your Honor,

16   it's two fold, that firstly.  And secondly, to show that the

17   first proof of claim and second proof of claim filed by Wells

18   Fargo have amounts on them that they show as delinquencies at

19   the time of filing and shortly thereafter.  And these credit

20   reports obtained a couple of years -- two years later,

21   approximately, are showing even higher arrearages than what

22   was originally indicated despite the fact that Mr. and Mrs.

23   Juliao have made a hundred percent --

24       THE COURT: Well, but that comes from information

25   outside the document itself, right?

1          MS. VUJIC:  Well, it --

2          THE COURT:  The document says what it says.

3          MS. VUJIC:  Correct.

4          THE COURT:  That it may differ from what some other

5    document says.

6          MS. VUJIC:  Correct.

7          THE COURT:  Well, it seems to me it doesn't go

8    particularly to the admissibility of this document.

9          MS. VUJIC:  I was asking the Court to take judicial

10   notice of the document so that we could show what the

11   delinquency is --

12         THE COURT:  Well, if it's in evidence --

13         MS. VUJIC:  -- being reported.

14         THE COURT:  -- whatever the document says I can use

15   it, I suspect.

16         MS. VUJIC:  Right.

17         THE COURT:  I'm going to -- I think I'm going to

18   admit it for, I think, the purpose of showing what was

19   reported to the credit bureau and what they put it on their

20   credit report.  Beyond that, I'm not so sure of its

21   evidentiary value.

22         MS. OLSON:  Thank you, Your Honor.

23         THE COURT:  So I will admit it on that basis and

24   we're talking now about Exhibit 6.  And if counsel for -- for

25   Wells Fargo would like, we can take a recess at some point

1   after -- if we're going to go through this with the other two

2   credit reports and make copies for Counsel, it -- if it would

3   be helpful.

4           MS. OLSON:   Yeah.   If that's appropriate.   I don't

5   want to make this laborious for the Court or sister counsel.

6           THE COURT:   Well, we'd be happy to do it --

7           MS. OLSON:   Okay.   Thank you, Your Honor.

8           THE COURT:   -- just to move -- move matters along.

9           MS. VUJIC:   Thank you, Your Honor.

10          THE COURT:   All right.   So I will admit Exhibit 6.

11  Do you have a copy for the Court --

12          MS. VUJIC:   I --

13          THE COURT:   -- or is that the only copy?

14          MS. VUJIC:   Yes.

15          THE COURT:   It is?

16          MS. VUJIC:   Could I --

17          THE COURT:   All right.   Hold on to it and then when

18  we get all -- are you going to do this with all three?

19          MS. VUJIC:   I -- I made a mistake, Your Honor.

20  There's two of them.

21          THE COURT:   All right.

22          MS. VUJIC:   But the other is -- is Mr. Juliao's.

23          THE COURT:   Can we do this with the -- the same

24  thing with the other one?

25          MS. VUJIC:   Yes.

1          THE COURT:  All right.  I'm going to refrain from

2    making copies for -- for both Counsel and myself or yourself

3    until you get them both -- until they're both -- if they will

4    be in front of me as admitted exhibits.  We'll take a few

5    moments to make copies and we'll go from there.

6          MS. VUJIC:  Thank you, Your Honor.

7    BY MS. VUJIC:

8     Q     Ms. Juliao, have you attempted to rent commercial

9    space in order to begin your own practice?

10   A     Yes.  I have.

11    Q     And have you been successful in that?

12   A     No.  I have not.

13    Q     Have you talked to landlords on your own?

14   A     I've been -- no.  I've been working with -- I actually

15   have two brokers that I've been working with to try to find

16   space.

17    Q     Have you come close to reaching an agreement for any

18   of these --

19   A     Yes.

20    Q     -- business --

21   A     I have.

22    Q     In dealing with your brokers, have you had any kind

23   of written communication as to whether you -- are a candidate

24   for -- for leasing any of these spaces?

25   A     I'm not clear on what you're asking.  I'm sorry.